Maurice L. Strickland

*vs.*

Peerless Casualty Company.

Kennebec.    Opinion June 30, 1914.

*Assumpsit.  Chronic Disease.  Exceptions.  False Representations.  Insurance: Policy.  Sick Benefits.*

1.  By Revised Statutes, Chap. 49, Sec. 93, agents of foreign insurance companies and agents of all domestic companies shall be regarded as in place of the company in all respects regarding insurance effected by them.

2.  The company is bound by the agent's knowledge of the risk and all matters connected therewith.

3.  Omissions and misdescriptions known to the agent shall be regarded as known to the company and waived by it as if noted in the policy.

4.  This provision has been held applicable to life, as well as fire insurance policies, and by parity of reasoning it should also be held to apply to a health policy like that in the case at bar.

On motion and exceptions by defendant.  Motion overruled. Exceptions sustained.

An action in assumpsit to recover sick benefits under a contract of insurance, provided for in a policy issued to the plaintiff by defendant, dated November 21, 1910, therein agreeing to pay plaintiff at the rate of eighty dollars per month, tried before the Superior Court for Kennebec County.  Plea, general issue and brief statement as follows:   That the statements and warranties set forth in the application for a policy of insurance declared upon in this action were untrue and that there is a breach of said warranties.   The jury returned a verdict for the plaintiff of $145.91.   The defendant excepted to an instruction by the presiding Judge to the jury and filed a general motion for a new trial.

The case is stated in the opinion.

*Williamson, Burleigh & McLean,* for plaintiff.

*F. W. Clair, and F. E. Brown,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, PHILBROOK, JJ.

HANSON, J.   This is an action of assumpsit to recover sick benefits under a policy of insurance dated November 21, 1910.   The plaintiff recovered a verdict of $145.91 the full amount claimed for illness between April 20, 1912, and July 27, 1912, and the case is before the Law Court on both motion and exceptions.

MOTION.   The defendant company claimed relief from liability on the ground that the plaintiff in his written application made false representations of fact, viz.:   that he had not received any medical or surgical treatment during the five years prior thereto and that he did not then have and had never had any chronic disease.   It is conceded that the plaintiff received and was treated for gun shot wounds only two months prior to the application, and there was evidence tending to show that he suffered from some form of gastric catarrh in the year 1907.

Art. 17, Sec. H of the policy contains this provision:   "It is understood and agreed that if any of the statements or warranties set forth in the application for this policy are false in whole or in part, the contract issued thereon shall become null and void from its inception and that all premiums paid thereon shall be forfeited to the company."

That statements in the application untrue in fact vitiate the policy is settled law.   *Maine Ben. Ass'n.* v. *Parks*, 81 Maine, 79; *Johnson* v. *Maine & N. B. Ins. Co.*, 83 Maine, 183; and if the question were to rest here it might perhaps with propriety be held that the verdict was manifestly contrary to the law and the evidence.

But R. S., Chap. 49, Sec. 93, provides that "such agents (of foreign insurance companies) and the agents of all domestic companies shall be regarded as in place of the company in all respects regarding insurance effected by them.   The company is bound by their knowledge of the risk and of all matters connected therewith.   Omissions and misdescriptions known to the agent shall be regarded as known to the company and waived by it as if noted in the policy."

This provision has been held applicable to life as well as fire insurance policies, *Marston* v. *Ins. Co.*, 89 Maine, 266, and also to accident policies, *Thorne* v. *Casualty Co.*, 106 Maine, 274; *Washburn* v.

*Casualty Co.*, 108 Maine, 429. By parity of reasoning it should also be held to apply to a health policy like that in the case at bar.

The plaintiff testified that the agent had full knowledge both of the gun shot wounds and of the previous gastric difficulty, which he claimed to be slight, and his testimony stands uncontradicted. The agent was not a witness. The question of the agent's knowledge being one of fact for the jury, it is apparent that this court would not be justified in setting aside a finding reasonable in itself and based upon such uncontradicted evidence.

The motion therefore is overruled.

EXCEPTION. Only one exception was taken and argued, and this relates not to liability but to the measure of damages. Art. 6 of the policy reads: "In the event of disability or illness resulting wholly or in part, directly or indirectly from tuberculosis, rheumatism, paralysis, neuritis, cancer, Bright's disease, chronic diseases, nervous diseases, and in all such cases referred to in this Article the limit of the company's liability shall be for a period not exceeding four weeks idemnity at the rate which would otherwise be payable under Article 5 of this policy, anything herein to the contrary notwithstanding." The rate referred to in Art. 5 was $80. per month plus ten per cent. increase if the policy had been in force for more than one year, as in this case.

The defendant contended that the illness for which the plaintiff was seeking to recover, viz.: broken compensation "resulted wholly or in part, directly or indirectly" from a chronic disease, viz.: aortic regurgitation or a leaking valve of the heart, and that therefore the liability under Article 6 was limited to a period of four weeks at the rate of $88. per month. This was a question of fact for the jury to determine upon all the evidence in the case including that of the medical experts. The presiding Judge at the close of the charge gave this instruction requested by the plaintiff: "The disease would not be a 'chronic disease,' as the words are used in Article 6 of the policy unless the jury are satisfied by a preponderance of the evidence that he suffered with it when he made the application, it would not be 'chronic' within the meaning of Article 6 of the policy."

This in effect confines a chronic disease that would limit the measure of damages to one existing when the application was made. This is clearly wrong. A chronic disease existing at that time would

not merely reduce the amount of liability but would .preclude any liability whatever and therefore any recovery.   The chronic disease contemplated in  Article 6 is one arising after the application was made, and it was for the jury to say whether the broken compensation for which the plaintiff was seeking to recover was or was not an acute condition resulting from a chronic disease, and they should not have been obliged to find that such chronic disease existed at the time the application was made.   The instruction requested and given was clearly prejudicial to the defendant as it forced the jury to apply a test unwarranted by the condition of the policy, and to render a verdict in excess of what it might have been had the correct interpretation been given.

*Exceptions sustained.*